IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZVI SHKEDI and SARAH CHANA SHKEDI, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF SCRANTON, *et al.*,<br><br>    Defendants. | CIVIL ACTION NO. 3:CV-14-2069<br><br>(JUDGE CAPUTO) |

**MEMORANDUM**

Presently before me is Defendants'[1] Motion to Dismiss (Doc. 11) Plaintiffs'[2] Complaint.  In this litigation, Plaintiffs contend that Defendants deprived them of their constitutional rights in relation to the condemnation of two properties they own in the City of Scranton, Pennsylvania.  Defendants have moved to dismiss Plaintiffs' 42 U.S.C. § 1983 procedural due process, substantive due process, equal protection, and First Amendment retaliation claims for failure to state a claim upon which relief can be granted.  Because the Complaint adequately sets forth claims for deprivation of Plaintiffs' due process, equal protection, and First Amendment rights, Defendants' motion to dismiss will be denied.

---

[1]   Defendants are the City of Scranton (the "City"), Patrick L. Hinton ("Mr. Hinton"), individually and in his capacity as Director of the City's Department of Licensing, Inspections, and Permits, Mark Seitzinger ("Mr. Seitzinger"), individually and in his capacity as Director of the City's Department of Licensing, Inspections, and Permits, Patricia Jennings-Fowler ("Ms. Jennings-Fowler"), individually and in her capacity as Housing Inspector for the City's Department of Licensing, Inspections, and Permits, and John J. Bannon ("Mr. Bannon"), individually and in his capacity as Housing Inspector for the City's Department of Licensing, Inspections, and Permits (collectively, "Defendants").

[2]   Plaintiffs are Zvi Shkedi ("Mr. Shkedi") and Sarah Chana Shkedi ("Mrs. Shkedi") (collectively, the "Shkedis"), individually and in their capacity as trustees of Five Ten Pittston Trust and Four Seventeen Harrison Trust, Five Ten Pittston Trust, and Four Seventeen Harrison Trust (collectively, "Plaintiffs").

## I. Background

The facts as alleged in the Complaint are as follows:

Plaintiff Five Ten Pittston Trust (the "Pittston Trust") is the owner of an eight (8) unit apartment building located on Pittston Avenue in Scranton, Pennsylvania (the "Pittston Avenue Property"). (*Compl.*, ¶¶ 2, 14.)  Plaintiff Four Seventeen Harrison Trust (the "Harrison Trust") is the owner of a four (4) unit apartment building located on Harrison Avenue in Scranton (the "Harrison Avenue Property"). (*Id*. at ¶¶ 3, 15.)  The Shkedis are trustees of the Pittston Trust and the Harrison Trust, and they are also practicing Hasidic Jews. (*Id*. at ¶¶ 21, 40, 88.)

Prior to the events giving rising to this action, only one other incident occurred between the Shkedis as trustees of the Pittston Trust and the City. (*Id*. at ¶ 17.)  In January 2007, the City's Zoning Code Enforcement Officers issued a Notice of Violation indicating that the Pittston Trust was illegally operating an eighth apartment in a building registered for only seven units. (*Id*.)  The Shkedis' appeal to the Zoning Hearing Board was unanimously denied, but the subsequent appeal of the Board's decision to the Court of Common Pleas of Lackawanna County was reversed in favor of the Shkedis. (*Id*. at ¶¶ 18-19.)

On or about August 28, 2013, Ms. Jennings-Fowler visited the Pittston Avenue Property for an unannounced inspection. (*Id*. at ¶ 24.)  Ms. Jennings-Fowler entered the property without an administrative search warrant or the consent of the Shkedis. (*Id*. at ¶ 25.)  At the time, all of the building's eight apartment units were rented. (*Id*. at ¶ 26.)  Ms. Jennings-Fowler returned to the Pittston Avenue Property the next day and condemned the property without any prior formal notice to the Shkedis or the Pittston Trust. (*Id*. at ¶ 27.)  Mr. Shkedi was informed of the condemnation of the property by a tenant. (*Id*. at ¶ 28.)  When Mr. Shkedi arrived at the Pittston Avenue Property, an orange condemnation sign

had been placed on the front door. (*Id*. at ¶ 29.)  Ms. Jennings-Fowler indicated to Mr. Shkedi that she was aware of the 2007 zoning incident. (*Id*.)

Following the condemnation, the City had the electric meter removed from the property, requiring all tenants to immediately vacate the premises. (*Id*. at 30.)  By letter dated August 30, 2013, Ms. Jennings-Fowler outlined the reasons that the Pittston Avenue Property was condemned. (*Id*. at ¶¶ 31-33.) However, although the letter was dated August 30, 2013, it was not mailed until September 5, 2013. (*Id*. at ¶ 34.)

Thereafter, the Shkedis hired a licensed contractor to paint the inside of the Pittston Avenue Property.  While the City does not require a permit for painting, Ms. Jennings-Fowler nevertheless issued a Stop-Work Order to the contractor on September 16, 2013 based on the contractor's failure to have a permit. (*Id*. at ¶ 35.)  Additionally, following the condemnation of the Pittston Avenue Property, the property was vandalized and burglarized on two occasions. (*Id*. at ¶ 37.)

In response to the condemnation, the Shkedis filed a Notice of Appeal to the City's Housing Appeals Board. (*Id*. at ¶ 38.)  Following a hearing on the Shkedis' appeal in November 2013, the Housing Appeals Board removed the condemnation placed on the Pittston Avenue Property and ordered the City to have the utilities restored to the property. (*Id*. at ¶¶ 39-45.)  Yet, the City never contacted the utility company to have electricity restored to the Pittston Avenue Property, despite numerous communications between Plaintiffs and the City. (*Id*. at ¶ 47.)  Finally, by letter dated June 6, 2014, Mr. Hinton, the new Director of the Department of Licensing, Inspections, and Permits, stated that "[b]efore the utilities can be connected, the city's condemnation policy must be followed.  Therefore, I am rejecting your request to reconnect the electric power." (*Id*. at ¶¶ 49-50.) Enclosed with Mr. Hinton's June 6, 2014 letter was a copy of the City's Condemnation Policy, which requires a property owner to secure a performance bond or cashier's check in the amount

of $10,000.00 to cover demolition costs prior to commencing any rehabilitation work on a condemned property. (*Id*. at ¶ 53.) Also enclosed with Mr. Hinton's letter was a letter from the City's Administrative Clerk, which infers that the City considers the Pittston Avenue Property abandoned by reason of nonuse and that the previously approved nonconforming use granted for the property as an eight unit rental building was revoked. (*Id*. at ¶ 55.)

By letter dated July 3, 2014, the City informed Plaintiffs that the Pittston Avenue Property was scheduled for demolition due to the dilapidated condition of the structure. (*Id*. at ¶ 56.) In response, Plaintiffs filed an appeals application, and a hearing was held before the City's Housing Appeals Board on August 25, 2014. (*Id*. at ¶¶ 57-58.) At the hearing, Mr. Hinton and the City Solicitor indicated that the City did not have any records on file that the condemnation of the Pittston Avenue Property was reversed. (*Id*. at ¶ 64.) Ultimately, the Housing Appeals Board held that the Pittston Trust had eight months to bring the property up to code, the City was to have electricity restored to the property, the City was to inspect the premises and identify necessary repairs, and the City was to complete a final inspection of the Pittston Avenue Property at the conclusion of eight months and if the property passed the inspection the demolition order would be vacated. (*Id*. at ¶ 65.) To date, however, electricity has not been restored to the Pittston Avenue Property. (*Id*. at ¶ 67.)

The City also informed Plaintiffs in July 2014 that they failed to register the Pittston Avenue Property and its residential units as required by the City's Code. (*Id*. at ¶ 68.) Plaintiffs, however, properly registered the property and paid the annual fee on March 14, 2014, and the registration deadline was not until April 30, 2014. (*Id*. at ¶¶ 69-70.) Plaintiffs received an undated letter on or about September 20, 2014 once again informing them that they were past due on the rental registration fee and threatening legal action if the fee was not paid, despite the fact that the fee was paid in full prior to the April 30, 2014 deadline. (*Id*. at ¶¶ 73-74.)

In addition to the condemnation proceedings involving the Pittston Avenue Property, the City also condemned the Harrison Avenue Property's two first floor apartments on November 19, 2013, the day after the Shkedis prevailed on their appeal before the Housing Appeals Board involving the Pittston Avenue Property. (*Id*. at ¶ 77.) The City condemned the Harrison Avenue Property without any prior notice. (*Id*. at ¶ 79.) The tenants were required by Mr. Bannon to vacate the premises immediately, and the tenants caused damage to the Harrison Avenue Property in the process. (*Id*. at ¶ 80.) Mr. Bannon indicated by letter to Plaintiffs that the Harrison Avenue Property was subject to condemnation as a result of unsafe wiring, the presence of cockroaches and mice, and people living in the basement. (*Id*. at ¶¶ 81-83.) As with the inspection of the Pittston Avenue Property, Mr. Bannon entered the Harrison Avenue Property without an administrative search warrant or the consent of Plaintiffs. (*Id*. at ¶ 85.)

In response to the condemnation notice, Plaintiffs filed a Notice of Appeal to the City's Housing Appeals Board. (*Id*. at ¶ 86.) A hearing was held on Plaintiffs' appeal on March 31, 2014. (*Id*. at ¶ 87.) The Housing Appeals Board did not rule on the appeal and instead continued the matter for ninety days to allow the parties to resolve their issues. (*Id*. at ¶ 93.) To date, the two first floor apartments at the Harrison Avenue Property remain vacant, and Plaintiffs have been unable to comply with the City's $10,000.00 bonding and cashier's check requirement. (*Id*. at ¶ 96.)

Additionally, as with the Pittston Avenue Property, the City incorrectly notified Plaintiffs by letter dated July 2, 2014 that they failed to register the Harrison Avenue Property and its residential units as required by the City's Code. (*Id*. at ¶ 97.) Plaintiffs, however, registered the property and paid the annual fee over six weeks prior to the registration deadline. (*Id*. at ¶¶ 98-99.) Plaintiffs received a second letter on or about September 20, 2014 indicating that they had failed to comply with the registration

requirement for the Harrison Avenue Property even though the registration fee had previously been paid in advance of the registration deadline. (*Id*. at ¶¶ 102-103.)

Based on the foregoing events, Plaintiffs commenced this action against Defendants on October 27, 2014. In their Seven-Count Complaint, Plaintiffs assert the following causes of action pursuant to 42 U.S.C. § 1983: Fourteenth Amendment Procedural Due Process (Count I): Fourteenth Amendment Substantive Due Process (Count II); Fourteenth Amendment Equal Protection (Count III); First Amendment Retaliation (Count IV); Fifth and Fourteenth Amendments Unlawful Taking (Count V); Fourth and Fourteenth Amendments Unreasonable Search and Seizure (Count VI); and a *Monell* claim against the City (Count VII).

On January 15, 2015, Defendants filed the instant motion to dismiss. (Doc. 11.) Specifically, Defendants seek dismissal of Plaintiffs' claims in Count I-IV of the Complaint for failure to state a claim upon which relief can be granted. (Doc. 12.) Plaintiffs filed a timely brief in opposition to the motion on March 3, 2015. (Doc. 17.) As the deadline to file a reply brief in further support of their motion has passed, Defendants' motion to dismiss is ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin

7

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

Defendants, as noted, seek dismissal of the procedural due process, substantive due process, equal protection, and First Amendment retaliation claims in Counts I-IV of the Complaint. Plaintiffs' First and Fourteenth Amendment claims are brought pursuant to 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . ." 42 U.S.C. § 1983. "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and

8

thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

**A.    Due Process**

The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that a state shall not "deprive any person of life, liberty, or property, without due process of law; . . ." U.S. Const. amend. XIV, § 1.  Due process under the Fourteenth Amendment has both "substantive and procedural components," *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011), and both components are at issue in this litigation.  Plaintiffs' procedural due process claims will be addressed first.

**1.    Procedural Due Process**

Plaintiffs raise two procedural due process claims in Count I of the Complaint.  First, Plaintiffs contend that Defendants interfered with their property interest in the use and ownership of the Pittston Avenue and Harrison Avenue Properties.  Second, Plaintiffs assert that Defendants deprived them of their liberty interest in reputation.  Defendants seek dismissal of both procedural due process claims.

**a.    Property Interest**

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir.2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).  For purposes of procedural due process, courts look to state law to determine whether a property interest exists. *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) ("Property interests are not created by the Constitution.  Rather they are created and

their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.")).

Defendants' motion to dismiss the procedural due process property interest claim will be denied. First, there is no dispute that Plaintiffs' ownership of the Pittston Avenue and Harrison Avenue Properties is a property interest protected by the Fourteenth Amendment.

Second, Plaintiffs adequately allege that the procedures afforded by Defendants failed to provide due process of law. In *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412 (3d Cir. 2008), the United States Court of Appeals for the Third Circuit addressed the due process rights of a property owner in the context of the condemnation of an apartment complex. As discussed in *Elsmere Park*, a hearing should generally be held before the Government deprives a person of his property. *Id*. at 417. Nevertheless, in special circumstances, a postdeprivation remedy may satisfy the requirements of due process. *Id*. Specifically, "[w]here there is 'the necessity of quick action by the State,' or where 'providing any meaning predeprivation process would be impractical, the Government is relieved of the usual obligation to provide a predeprivation hearing.'" *Id*. (quoting *Parratt v. Taylor*, 451 U.S. 527, 539, 101 S. Ct. 1908, 68 L. Ed. 2d (1981)). Applying those principles, the Third Circuit undertook the following analysis in *Elsmere Park*:

> [The] first task, then, is to determine whether the Town was faced with circumstances in which it was required to provide a predeprivation hearing. If so, then no amount of postdeprivation process could cure the Town's initial failure to provide a hearing. If, on the other hand, the Town was faced with such exceptional circumstances that no predeprivation hearing was required, then the question becomes whether it made adequate postdeprivation procedures available to the Club.

*Id*. (internal citations and footnote omitted).

In determining whether a predeprivation hearing was required prior to the condemnation of the apartment complex at issue, the Third Circuit emphasized that it "is beyond question 'that summary administrative action may be justified in emergency situations.'" *Id*. (quoting *Hodel v. Va. Surface Mining & Recl. Ass'n*, 452 U.S. 264, 300, 101

10

S. Ct. 2352, 69 L. Ed. 2d 1 (1981)). Accordingly, "where there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist, the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." *Id*. at 418 (citation, quotation, and internal alteration omitted). Ultimately, the *Elsmere Park* court concluded that, under the circumstances in that case, a predeprivation hearing was not required and the plaintiff was provided with an adequate postdeprivation remedy. *Id*. at 420-23.

Based on the facts set forth in the Complaint, Plaintiffs sufficiently allege that Defendants' failure to provide pre-condemnation notice and a hearing violated the Fourteenth Amendment. In particular, Plaintiffs adequately allege that the decisions to condemn summarily the Pittston Avenue and Harrison Avenue Properties were not supported by any competent evidence that the stated reasons for condemnation constituted an emergency. Likewise, the allegations in the Complaint suggest that any such invocation of emergency procedures was arbitrary or an abuse of discretion. Plaintiffs' allegations therefore state a claim against Defendants for a violation of the Fourteenth Amendment when their properties were condemned without predeprivation process. Defendants' motion to dismiss the procedural due process property interest claim in Count I of the Complaint will be denied.

### b. Liberty Interest

Plaintiffs also assert a liberty interest in reputation claim in Count I of the Complaint. The Supreme Court held in *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971) that an individual has a protectable interest in reputation. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id*. at 437, 91 S.Ct. 507. Courts "subsequently clarified, however, that 'reputation alone is not an

11

interest protected by the Due Process Clause.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (quoting *Versarge v. Twp. of Clinton*, 984 F.2d 1359, 1371 (3d Cir. 1993)). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Id*. (citing *Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)). "This has been referred to as the 'stigma-plus' test." *Dee v. Borough of Dunmore*, 549 F.3d 225, 233-34 (3d Cir. 2008).

To satisfy the "plus" prong of the stigma-plus test, a plaintiff must demonstrate an "alteration or extinguishment of 'a right or status previously recognized by state law.'" *Hill*, 455 F.3d at 237 (quoting *Paul v. Davis*, 424 U.S. 693, 711, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)). A constitutionally protected property interest can qualify as a sufficient "plus." *Dee*, 549 F.3d at 234. As noted, Plaintiffs had a constitutionally protected property interest in the ownership of the Pittston Avenue and Harrison Avenue Properties.

Plaintiffs also sufficiently allege the "stigma" prong of the stigma-plus claim. "In order to satisfy the 'stigma' prong, a plaintiff must show (1) that the stigmatizing statement was made publically, and (2) that the statement was substantially and materially false." *Kocher v. Larksville Borough*, 548 F. App'x 813, 820 (3d Cir. 2013) (citing *Hill*, 455 F.3d at 236); *Ersek v. Twp. of Springfield*, 102 F.3d 79, 83-84 (3d Cir. 1996) ("For government action to infringe the 'reputation, honor, or integrity' of an individual, that government action first must involve a publication that is substantially and materially false."). For purposes of the instant motion to dismiss, Plaintiffs adequately plead facts to raise a reasonable inference that discovery will reveal evidence satisfying the "stigma" prong of Plaintiffs' liberty interest claim. Specifically, it is alleged that Defendants publically made false statements concerning the conditions of the property. Plaintiffs further assert that Defendants tarnished their names and reputations as a result of the publication of such information. These allegations are

sufficient at this stage of the litigation to withstand a motion to dismiss. As such, Plaintiffs will be permitted to proceed with their liberty interest in reputation due process claim.

### 2.     Substantive Due Process

In Count II of the Complaint, Plaintiffs allege a violation of their substantive due process rights in their use and enjoyment of real property. According to the Third Circuit, "the fabric of substantive due process . . . encompasses at least two very different threads." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000). The first of these threads (which is not at issue in this case) applies when a "plaintiff challenges a legislative act." *Id*. Plaintiffs' claim here instead falls under the second of these threads, which "protects against certain types of non-legislative action." *Id*. To establish a substantive due process violation under this thread, a plaintiff must prove: (1) the deprivation of an interest protected by the substantive due process clause; and (2) that the government's deprivation of that protected interest shocks the conscience. *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 190 (3d Cir. 2009) (citing *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)); *see also Nicholas*, 227 F.3d at 139-40 ("To prevail on a non-legislative substantive due process claim, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.").

Here, Plaintiffs adequately allege that they were deprived of an interest protected by the substantive due process clause. The Third Circuit has stated that a plaintiff alleges a property interest worthy of substantive due process protection "in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property." *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 600-01 (3d Cir.1995), *abrogated on other grounds by United Artists Theatre Cir., Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003); *Andrews v. Bureau of Codes Admin. Office*, No. 08-1669,

2012 WL 610333, at *9 (M.D. Pa. Feb. 24, 2012) (same); *MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 440-41 (E.D. Pa. 2011) (same); *Thornbury Noble, Ltd. v. Thornbury Twp.*, No. 99-6460, 2002 WL 442827, at *5 (E.D. Pa. Mar. 20, 2002) (same).

The Complaint also adequately pleads that Defendants engaged in conscience-shocking behavior with respect to the deprivation of Plaintiffs' substantive due process rights. While what "shocks the conscience" may "var[y] depending on the factual context," the standard "encompasses 'only the most egregious official conduct.'" *United Artists Theatre Cir., Inc. v. Twp. of Warrington*, 316 F.3d 392, 399 (3d Cir. 2003) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)). However, "allegations of corruption, self-dealing, [or] bias against an ethnic group" suggest conscience-shocking behavior. *Chainey v. Street*, 523 F.3d 200, 220 (3d Cir. 2008); *see also MARJAC, LLC v. Trenk*, 380 F. App'x 142, 147 (3d Cir. 2010) (holding in the zoning context that "selective enforcement motivated by ethnic bias may constitute arbitrary conduct capable of shocking the conscience.").

In this case, Defendants are alleged to have discriminated against the Shkedis, practicing Hasidic Jews, due to their religion and ethnicity. If this allegation is true and Defendants' conduct was motivated by the Shkedis' religion and ethnicity, it could shock the conscience. *See, e.g., Hayward v. Borough of Sharon Hill*, No. 13-825, 2013 WL 5777293, at *3 (E.D. Pa. Oct. 25, 2013) (allegation that the plaintiff was deprived of the use of his property because of his race stated substantive due process claim); *Rittenhouse Entm't, Inc. v. City of Wilkes-Barre*, 861 F. Supp. 2d 470, 487 (M.D. Pa. 2012) (allegation that the defendants harassed business based on the race of its patrons sufficiently alleged conscience-shocking behavior). As Plaintiffs have stated a substantive due process claim against Defendants, the motion to dismiss Count II of the Complaint will be denied.

**B.    Equal Protection**

Count III of the Complaint asserts that Defendants violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment.  The Equal Protection Clause directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Two theories exist upon which a plaintiff may state a § 1983 equal protection claim, the traditional theory or the class-of-one theory. *See Scavone v. Pennsylvania State Police*, No. 9-1623, 2011 WL 6100621, at *3 (M.D. Pa. Dec. 7, 2011).  Plaintiffs contend that the facts alleged in the Complaint adequately plead an equal protection claim under both theories.

Under the traditional theory, a plaintiff must allege that "(1) he or she is a member of a protected class and (2) he or she received different treatment than that received by other similarly situated individuals." *Suber v. Guinta*, 902 F. Supp. 2d 591, 606 (E.D. Pa. 2012) (citing *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992)). Furthermore, a plaintiff "is not required to identify in the Complaint specific instances where others have been treated differently." *Suber*, 902 F. Supp. 2d at 606 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)). "Rather, a general allegation that a plaintiff has been treated differently from others similarly situated will suffice." *Id*.  Here, the Shkedis allege that they are members of a protected class, (*Compl.*, ¶ 21), and that they were treated differently than other similarly situated property owners because of their religion and ethnicity. (*Id*. at ¶ 120.)  These allegations are sufficient to state an equal protection claim based on the Shkedis' membership in a protected class. *See, e.g., Hayward*, 2013 WL 5777293, at *4.

Plaintiffs also adequately state a class-of-one equal protection claim. To state an equal protection claim on a class-of-one theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally,

and (3) there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006). Restated, to survive a motion to dismiss, a complaint alleging a claim under the class-of-one theory must aver, at a minimum, that the defendant intentionally treated the plaintiff differently from others similarly situated and that there was no rational basis for such treatment. *Phillips*, 515 F.3d at 243. General allegations that a plaintiff was treated differently from others similarly situated are sufficient, and a plaintiff need not "identify in a complaint actual instances where others have been treated differently for purposes of equal protection." *Id*. at 244. These requirements are satisfied in this case, as Plaintiffs allege that Defendants have intentionally failed to uniformly enforce the City's laws and ordinances to others in similar circumstances. (*Compl.*, ¶¶ 121-122.) Plaintiffs further aver that the laws and ordinances were stringently applied against them for purposes of retaliation and harassment, (*id*.), and the Complaint suggests that the application of the laws and ordinances in this manner lacked a rational governmental purpose. These allegations are sufficient to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a class-of-one equal protection claim. Defendants' motion to dismiss Count III of the Complaint will be denied.

**C.   First Amendment Retaliation**

Lastly, Defendants seek dismissal of Plaintiffs' First Amendment retaliation claim in Count IV of the Complaint. The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

A First Amendment retaliation claim requires "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his

constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

Plaintiffs allege all necessary elements of a First Amendment retaliation claim. First, Plaintiffs allege that they exercised their constitutional rights by petitioning and opposing the initial condemnation of the Pittston Avenue Property. *Accord Borough of Duryea v. Guarnieri*, - - - U.S. - - -, 131 S. Ct. 2488, 2494, 180 L. Ed. 2d 408 (2011) ("the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes."). Second, the Complaint adequately details retaliatory action taken by Defendants that would deter a person from exercising their constitutional rights. In particular, Plaintiffs aver that Defendants condemned the Harrison Avenue Property as a result of the appeal Plaintiffs filed regarding the condemnation of the Pittston Avenue Property. Moreover, as Plaintiffs assert that the condemnation of the Harrison Avenue Property occurred the day after the Shkedis successfully appealed the condemnation of the Pittston Avenue Property, they sufficiently plead a causal connection between their protected conduct and the alleged retaliatory action. These allegations are sufficient to withstand Defendants' motion to dismiss the First Amendment retaliation claim in Count IV of the Complaint.

### IV. Conclusion

For the above stated reasons, Defendants' motion to dismiss will be denied in its entirety.

An appropriate order follows.

| | |
|---|---|
| April 1, 2015<br>Date | /s/ A. Richard Caputo<br>A. Richard Caputo<br>United States District Judge |